STATE *ex rel.* RAILROAD COMMISSIONERS, *Relators,* v. LIVE OAK, PERRY & GULF RAILROAD COMPANY, *Respondent.*

Opinion Filed November 20, 1917.

Petition for rehearing denied December 17, 1917.

1. Where in mandamus proceedings against a railroad company to enforce a rate fixed by the railroad commissioners for the transportation of a particular class of freight, the railroad company in its answer to the alternative writ fails to aver that the receipts derived from the traffic under the rate prescribed is or will be less than the expense of hand-

362    SUPREME COURT OF FLORIDA.

State ex rel. R. R. Com. v. L. O, P. & G. R. R. Co.—Opinion of Court.

ling the traffic, or that the receipts are equal to such expense, and no figures are given to show the cost of handling the traffic in that class and the revenue derived therefrom, the answer will be held to be insufficient to overcome the presumption of reasonableness which attaches to the order of the railroad commissioners prescribing the rate.

2. An order of the railroad commissioners prescribing a rate for the transportation by railroads of a certain class of freight handled in car load lots and such order prescribes different charges to be made for different distances which the freight may be hauled, cannot be successfully attacked by a railroad company resisting the enforcement of the order by segregating one item in the schedule of rates prescribed and showing that the expense incurred by handling the freight for the distance to which the item applies equals or exceeds the revenue derived by the railroad from handling the freight for that distance.

A case of original jurisdiction.

Peremptory writ awarded.

D. C. McMullen, for Relators;

John F. Harrell, for Respondents.

ELLIS, J.—An alternative writ of mandamus was issued by this court against The Live Oak, Perry & Gulf Railroad Company, upon the petition of the Railroad Commissioners requiring the railroad company to observe as its maximum rate, all the rates prescribed by Order No. 431, or show cause why it refuses so to do.

Order No. 431 is a general order affecting Class "P" freight; that is to say car load lots of certain commodities weighing per car not more than a certain number of pounds which varies according to the character of the

commodity hauled. The order prescribed amounts to be charged on Class "P" freight hauled for a distance of 5 miles and under, and for that distance and greater to 400 miles. A different amount being prescribed for each five or ten miles.

The alternative writ alleges that Order No. 431 was made in February, 1914, and became effective as to respondent in March of that year, but upon petition made by the respondent and other "short lines of railroad within the State" to the Railroad Commissioners from time to time the order was suspended until January 1st, 1917, when the respondent put the order and the scale of rates therein prescribed in effect except as to the rate prscribed for 5 miles and under, but as to other petitioning carriers the order was suspended. The order prescribes a rate of four dollars per car for distances of five miles and under, but the respondent charges a rate of five dollars per car for all distances under ten miles.

The answer admits these allegations, but in justification avers in substance that it cannot perform the service of hauling Class "P" freight five miles and under for four dollars, except at an actual loss in revenue "for each and every carload shipment handled by this respondent under said order; that the entire revenue derived by this respondent for all Class 'P' commodities to which said Order No. 431 applies for distances of five miles and under at the rate prescribed by the relators in said Order No. 431 would be less than the actual expense and cost to this respondent in handling said shipments." That the respondent does not own a sufficient number of flat cars and box cars with which to handle traffic over its line, and its financial condition is such that it cannot acquire them so that it is compelled to rent the

cars from other carriers; that on account of demurrage rule No. 4 promulgated by the Railroad Commissioners, it often becomes necessary for respondent to require six days to handle a "car over a distance of five miles" during which time respondent has to pay the usual per diem rental for the cars, and that it requires continuously an average of between five and six days for the handling of cars for the five-mile hauling and under as provided in said order; that since Order No. 431 was entered the per diem rental of flat or box cars has advanced from forty-five cents to seventy-five cents each, not excluding Sundays or legal holidays, and therefore the actual cost of the service for five-mile hauls and under to respondent for car hire alone would exceed the rate prescribed by the order for that service; that if respondent is required to put said order into effect it would require respondent to perform a service not remunerative, but at an actual loss, and the order would be confiscatory and would result in depriving the respondent of property without due process of law; that that part of the order which respondent has not put into effect is unjust, unreasonable and oppressive, and if carried into effect would confiscate the respondent's property and compel it to perform the services required without just and reasonable compensation; that it would deny respondent equal protection of the law; that the rate which respondent charges and has now in force, to-wit, five dollars per car for hauling same ten miles and under is the minimum rate at which such service can be performed by it and permit the respondent to realize compensation for such service; that such rate is lower than the minimum rate prescribed in practically all the other States of the Union; that the order is specially oppressive to short roads like the respondent's road, as the bulk of

business in Class "P" commodities is handled in short hauls when the freight is delivered to connecting carriers; that in recognition of such discrimination against short roads the Railroad Commissioners of Georgia permitted "short roads" in that State to charge a ten per cent. higher rate than the large lines; that the Railroad Commissioners in suspending the order as to other short lines of railroad in the State, but refusing to suspend it as to respondent, discriminated against respondent, and in favor of the other short lines; "that there was no evidence whatever before the relators justifying them in making an order discriminating against this respondent and denying to it the right to charge and receive the same compensation for the same identical service that other short roads similarly situated received for a like service;" that other short roads in the State were permitted to charge $5.00 per car for a ten-mile haul and under, but respondent was not permitted to do so; that when respondent's petition for a suspension of the order was denied in December, 1916, it petitioned relators for a rehearing in which it offered to show conclusively that the service required by the order could not be performed except at a loss. A copy of the petition was attached to the answer and showed that the expense incurred by the railroad in handling Class "P" freight over the short distance of ten miles and under was greater than the ("net") revenue derived for that service; that relators denied the petition thereby "denying to this respondent an opportunity to show to relators under the conditions then existing that it would be oppressive and confiscatory to require it to observe said order;" that because of Rule 19 which requires a reduction of ten per cent. on intrastate shipments when the entire haul is over two lines of road and twenty per cent. reduction

when the haul is over three or more lines of road, respondents revenue derived from Class "P" freight is further reduced because "practically all of intrastate shipments under said order for the five-mile haul and under move over two or three lines" and renders the revenue derived from "such tariff" to be less than the per diem rental cost of cars used in "such service;" and that the enforcement of the order would be repugnant to the "commerce clause of the Federal Constitution, and in contravention of the Fourteenth Amendment to the Constitution of the United States."

The foregoing averments were contained in paragraphs numbered from eight to eighteen inclusive.

Upon this answer the Relators by their counsel joined issue in May, 1917. On the 10th day of July, Relator's counsel moved the court for leave to withdraw from the files the joinder of issue upon the answer and moved the court to strike from the answer paragraphs numbered from eight to eighteen inclusive, and that the court issue a peremptory writ upon the pleadings upon the following grounds:

"1. Because the said paragraphs of the return sought to stricken are immaterial and irrelevant.

"2. Because the paragraphs sought to be stricken do not constitute, together with the other allegations in the return, any defense to this proceeding.

"3. Because the paragraphs sought to be stricken are not responsive to the Alternative Writ.

"4. Because the paragraphs sought to be stricken do not show that Order No. 431 is unjust, unreasonable and illegal, but only attempt to show that a portion of said Order prescribes rates, which are alleged to be unremunerative.

"5. Because the law does not contemplate that every

service performed by a common carrier under order of the State authority shall be remunerative.

"6.   Because the paragraphs and returns sought to be stricken fail to allege and show clearly that the service required in the entire traffic, to which Order No. 431 applied, would be rendered without just compensation."

The Respondent's answer to the alternative writ, as will be seen from the averments the substance of which is given above, attacks only one item or rate in the Class "P" schedule of rates as prescribed by Order No. 431.   We do not find in the answer an averment to the effect that the receipts derived by respondent from its Class "P" traffic were less than the expense of handling such traffic, nor that the expense was equal to the receipts, nor were any figures given in the answer to show the cost to respondent of handling Class "P" traffic nor the revenue derived therefrom.   No attempt was made in the answer to apply to the accounts of the railroad the rates proposed by Order No. 431 to show the effect upon the revenue derived from Class "P" traffic an enforcement of the order would have.   The averment in the answer as to the effect of the enforcement of Rule 19 is confined to the five-mile haul and under; in other words to one item of the schedule, and not to the entire schedule prescribed by the order.   In considering the question of the validity of a rate prescribed by the Railroad Commissioners for one class of traffic this court held in the case of State *ex rel.* Railroad Commissioners v. Florida East Coast Ry. Co., 72 Fla. 379, 73 South. Rep. 171, that a comparison should be made between the cost of handling that particular class of traffic and the revenue derived from the entire traffic in that class.   If it should appear upon such comparison that an enforcement of the order would compel the railroad to carry the par-

ticular class of freight at cost or below the cost of handl-
ing it, or so little above the cost of handling as not to
amount to a substantial income for the service over the
costs of rendering it, the presumption of reasonableness
which clothes the order would be rebutted.    See Northern
Pac. R. Co. v. State of North Dakota *ex rel.*    Attorney
General, 236 U. S. 585, 35 Sup. Ct. Rep. 429.    The rate
making power, said Mr. Justice Hughes in the above
case, may be exercised in a practical way and the legis-
lature is not bound to assure a net profit from every
mile, section or other part into which the road might be
divided.

Counsel for respondent however contends that the
return attacks the entire lass "P" rate.  We have not so
construed the language of the return, nor do we think
it is reasonably susceptible to such construction.    In his
brief counsel for the respondent says:    "As the respond-
ent saw it, it was so easy to demonstrate in the return
the unreasonableness of this part of the order while not
conceding the reasonableness or justness of any other
part of the order."    We do not agree with the learned
counsel for the respondent that the traffic sought to be
regulated by Order No. 431 is so divisible or separable
that account may be taken of each distance to which
the order applies and declare each item of the schedule
reasonable or unreasonable accordingly as the revenue
derived from that particular haul is greater or less than
the cost of handling the freight for that distance.    The
legislature through its administrative agency has segre-
gated and set apart certain commodities which shall con-
stitute a certain class of railroad traffic and prescribed
rates which shall govern the railroads in handling that
traffic; it is not necessary to the validity of the order
that a profit is assured from "every mile' section or other

part into which the road might be divided."

The answer sets up no defense to the alternative writ. The motion of relators is therefore granted. .The paragraphs of the answer numbered from eight to eighteen inclusive are stricken and a peremptory writ of mandamus awarded.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, J. J., concur.